**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

AD Venture S.A.L. (O.S.C.)

        Applicant,

EADS North America, Inc.,

        Respondent.

**Case No. 1:13-mc-00028-AJT-TRJ**

**AD VENTURE'S MEMORANDUM IN SUPPORT OF *EX PARTE***
**APPLICATION FOR ORDER DIRECTING EADS**
**NORTH AMERICA TO PRODUCE DOCUMENTS**
**PURSUANT TO 28 U.S.C. § 1782 FOR USE IN FOREIGN PROCEEDING**

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND ............................................................................................... 5

II.    ARGUMENT ................................................................................................... 9

    A.    AD Venture Can Establish A Clear Showing That It Is Entitled To The Discovery Sought Under Section 1782 And Is Likely To Prevail On The Merits .......................................................................................................... 10

        1.    The Discovery AD Venture Seeks Is From A Person Residing In The Eastern District of Virginia ............................................................ 12

        2.    The Discovery Is Sought For Use In A Proceeding Before A Foreign Tribunal ........................................................................... 12

        3.    AD Venture Is An "Interested Person" Within The Meaning Of The Statute ............................................................................... 13

        4.    Each Of The Intel Balancing Factors Favors Disclosure ......................... 13

    B.    AD Venture Will Suffer Irreparable Injury If The Expedited Relief Is Not Granted ............................................................................................... 16

    C.    The Balance Of Equities Tips Decidedly In AD Venture's Favor ..................... 17

    D.    Consideration Of The Public Consequences In Employing The Extraordinary Remedy Of Injunction Favors Granting AD Venture Preliminary Injunctive Relief ............................................................................ 18

III.    CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Comisión Ejecutiva, Hidroeléctrica Del Rio Lempa v. Nejapa Power Co.*,
  No. 08-135-GMS, 2008 WL 4809035 (D. Del. Oct. 14, 2008) ..............................................12

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)......................................................................................................14

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
  17 F.3d 691 (4th Cir. 1994) ......................................................................................................17

*In re Application of Edelman*,
  295 F.3d 171 (2d Cir. 2002)......................................................................................................12

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)....................................15

*In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*,
  No. 08-20378, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011)......................................................12

*In re Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992), *cert. denied*, 506 U.S. 861 (1992)................................................11

*In re Application of Procter & Gamble Co.*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004)....................................................................................14

*In re Clerici*,
  481 F.3d 1324 (11th Cir. 2007) ................................................................................................17

*In re Infinity Bus. Grp., Inc.*,
  No. 10-06335, 2012 WL 5420410 (Bankr. D.S.C. June 1, 2012)..............................................16

*In re Letter of Request from Amtsgericht Ingolstadt, Federal Republic of Germany*,
  82 F.3d 590 (4th Cir. 1996) ......................................................................................................11

*In re Roz Trading Ltd.*,
  469 F. Supp. 2d 1221 (N.D. Ga. 2006) .....................................................................................12

*In re the Search of the Premises Located at 840 140th Avenue NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011) ....................................................................................................11

*In re Thao-Lao Lignite (Thail.) Co.*,
  821 F. Supp. 2d 289 (D.D.C. 2011) ..........................................................................................15

**TABLE OF AUTHORITIES**
**(Continued)**

**(Pages)**

*In re Veiga,*
  746 F. Supp. 2d 8 (D.D.C. 2010) ...................................................................................15, 16

*Infineon Technologies AG v. Green Power Technologies Ltd.,*
  247 F.R.D. 1 (D.D.C. 2005)........................................................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*
  542 U.S. 241 (2004)......................................................................................... passim

*Jaffe v. LSI Group,*
  874 F. Supp. 2d 499 (E.D. Va. 2012) ....................................................................12

*Lancaster Factoring Co., Ltd. v. Mangone,*
  90 F.3d 38 (2d Cir. 1996) ......................................................................................13

*Leiter Minerals Inc. v. United States,*
  352 U.S. 220 (1957).................................................................................................16

*Newsome v. Penske Truck Leasing Corp.,*
  437 F. Supp. 2d 431 (D. Md. 2006) ...................................................................17, 18

*Real Truth About Obama, Inc. v. Federal Election Commission,*
  575 F.3d 342 (4th Cir. 2009) ...............................................................................3, 10

*Roland Mach. Co. v. Dresser Indus, Inc.,*
  749 F.2d 380 (7th Cir. 1984) ...............................................................................16

*Splitfish AG v. Bannco Corp.,*
  727 F. Supp. 2d 461 (E.D. Va. 2010) .....................................................................3

*Ungaro-Benages v. Dresdner Bank AG,*
  379 F.3d 1227 (11th Cir. 2004) ............................................................................16

*Winn v. AP,*
  903 F. Supp. 575 (S.D.N.Y. 1995)........................................................................18

**RULES**

Fed. R. Civ. P. 65 .........................................................................................................9

**STATUTES**

28 U.S.C. § 1782............................................................................................. passim

**AD VENTURE'S MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR
ORDER DIRECTING EADS NORTH AMERICA TO PRODUCE DOCUMENTS
PURSUANT TO 28 USC § 1782 FOR USE IN FOREIGN PROCEEDING**

AD Venture S.A.L. (O.S.C.) ("AD Venture") comes to this Court seeking expedited

discovery pursuant to 28 U.S.C. § 1782 as a last resort after being repeatedly stonewalled and

denied access to documents pertaining to claimed violations of four exclusive commercial

representation agreements ("Representation Agreements") by Signalis S.A.S., formerly known as

Sofrelog S.A.S. ("Signalis/Sofrelog S.A.S.").  In 2004, AD Venture and Signalis/Sofrelog S.A.S.

entered into exclusive Representation Agreements pursuant to which AD Venture was engaged

to help market surveillance systems developed by Signalis/Sofrelog S.A.S. covering four

countries in the Middle East (the "Territories") in return for a commission based on the contract

price and overall value of each new transaction initiated under the agreements.  This relationship

proved mutually beneficial until Signalis/Sofrelog S.A.S. was acquired by EADS Defence and

Communications Systems, which is part of the European Aeronautic Defence and Space group of

companies ("EADS Group").  Thereafter, Signalis/Sofrelog S.A.S. and its affiliated entities (*i.e.*,

those within EADS Group) began to blatantly breach its contractual obligations to AD Venture

by contracting directly with potential clients for the provision of goods and services and by

subcontracting within EADS Group, thus reducing the revenue received by Signalis/Sofrelog

S.A.S.  Signalis/Sofrelog S.A.S.'s improper conduct had the effect of radically reducing the

volume of goods and services covered by AD Venture's contractual agreement with

Signalis/Sofrelog S.A.S., thus depriving AD Venture the equivalent of tens, if not hundreds of

millions, of dollars in commissions due to it.

For nearly two years now, AD Venture has sought to vindicate its rights under the

Representation Agreements.  It commenced proceedings before foreign tribunals—first a French

commercial court on procedural grounds, seeking access to various contracts that Signalis/Sofrelog S.A.S. refused to disclose, and presently an *ad hoc* Arbitration, AD Venture S.A.L. (O.S.C.) v. Signalis S.A.S. (Tschanz, President of Arb. Tribunal) with its seat in London, England, United Kingdom (the "Arbitration"). In both actions, AD Venture has sought production of disputed contracts entered into by Signalis/Sofrelog S.A.S.'s parent entities within EADs Group, so that AD Venture could establish its damages claim with specificity. However, Signalis/Sofrelog S.A.S. and its affiliated entities have played a masterful shell game to avoid producing the disputed agreements to AD Venture.

Most recently, when the Tribunal in the Arbitration ordered the disclosure of four disputed contracts (the "Four Contracts")—documents that would enable AD Venture to assess the precise amount of damages which it was owed for Signalis/Sofrelog S.A.S.'s breach— Signalis/Sofrelog S.A.S. flatly refused to produce the documents, contending that they were in the possession of other EADS Group affiliates. As EADS Group is not a party to the Arbitration and will not voluntarily subject itself to the Tribunal's jurisdiction, the Tribunal cannot compel EADS Group to produce the Four Contracts. The Arbitration is now set for an evidentiary hearing beginning September 4, 2013, and Signalis/Sofrelog S.A.S. continues to refuse production of the Four Contracts. Without discovery of those documents, AD Venture will be unable to establish the total measure of damages suffered. In an attempt to avoid an injustice, AD Venture requests this Court issue an expedited preliminary injunction compelling Signalis/Sofrelog S.A.S.'s US-based affiliate, EADS North America, Inc. ("EADS North America"), to produce the Four Contracts by August 31, 2013 for use in the foreign action pursuant to 28 U.S.C § 1782.

As set forth below, AD Venture can establish each of the elements required for a preliminary injunction.  *See Splitfish AG v. Bannco Corp.*, 727 F. Supp. 2d 461, 465 (E.D. Va. 2010) (to establish entitlement to preliminary injunctive relief, a plaintiff must demonstrate: "(i) 'a clear showing that [the plaintiff] will likely succeed on the merits at trial'; (ii) 'a clear showing that [the plaintiff] is likely to be irreparably harmed absent preliminary relief'; (iii) that 'the balance of equities tips in [the plaintiff's] favor'; and (iv) consideration of the 'public consequences in employing the extraordinary remedy of injunction' favors granting preliminary injunctive relief") (quoting *Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009)).

First, AD Venture can establish a clear showing that it is entitled to the discovery sought under Section 1782.  AD Venture has identified a narrowly tailored set of documents—the Four Contracts—that are highly relevant to the Tribunal.  AD Venture has requested the Tribunal order the production of these documents, which the Tribunal has done.  But Signalis/Sofrelog S.A.S. has claimed to the Tribunal that it does not possess the requested documents, and that its affiliates in the EADS Group will not consent to their production.  This is precisely the kind of scenario for which Section 1782 was designed to provide relief.

Second, AD Venture can establish a clear showing that it will be irreparably harmed absent an order compelling production of the Four Contracts prior to the Arbitration.  If AD Venture does not obtain production of the Four Contracts, it will be forced to proceed to a final adjudication of its breach of contract claims on a less than full factual record.  That final judgment could be entitled to preclusive effect and likely could not be reopened even if AD Venture were to ultimately obtain the evidence sought.

Third, the balance of equities tips decidedly in AD Venture's favor.  Signalis/Sofrelog S.A.S. and its affiliated entities have done everything in their power to avoid having to disclose the full extent of their wanton breach and, to this point, their efforts have proved fruitful.  But fundamental notions of fairness weigh heavily in favor of transparency and full discovery of the relevant evidence.  The universe of documents sought is extremely limited—four documents totaling less than 1,000 pages—such that there is virtually no burden to EADS North America.  Thus, the potential harm that would inure to AD Venture should it not receive this crucial evidence far outweighs any burden associated with this modest production.

Finally, consideration of the public consequences in employing the extraordinary remedy of injunction favors granting preliminary injunctive relief.  All indications are that Signalis/Sofrelog S.A.S. has breached the Representation Agreements.  The only open questions are the extent of the breach and magnitude of resulting damages.  The notion that Signalis/Sofrelog S.A.S. could successfully defend itself in the Arbitration simply by refusing to produce documents evidencing the breach offends fundamental notions of due process.  Such conduct would be sanctionable in a proceeding before this Court and should not be condoned merely because the underlying proceeding is an arbitration seated in the United Kingdom.

Based on the foregoing, AD Venture respectfully requests the Court enter order compelling EADS North America to produce in electronic format the Four Contracts for which the Tribunal ordered disclosure in the *ad hoc* Arbitration AD Venture S.A.L. (O.S.C.) v. Signalis S.A.S. (Tschanz, Arb.) in London, England, United Kingdom  by August 31, 2013, to the extent EADS North America has possession of the documents, including through easy and customary electronic access and/or through the shared server of the EADS Group.

I.      **BACKGROUND**

AD Venture is a company incorporated under Lebanese law with a registered office in

Beirut, Lebanon.  Declaration of Nabil El Daher ("El Daher Decl.," which is attached to the

Application as Exhibit 1 (Dkt. No. 1-3)), ¶ 4.  AD Venture is a commercial agent which has

assisted, advised, and represented Signalis/Sofrelog S.A.S. in marketing its goods and services,

and in establishing, developing, and strengthening its business relationships in the Territories.

*Id.*  The Chief Executive Officer of AD Venture is Nabil El Daher ("Mr. El Daher"), who is a

citizen of the United States.  *Id.*, ¶¶ 1-2.

In 2002, Mr. El Daher entered into an exclusive agreement to assist Signalis/Sofrelog

S.A.S. in pursuing opportunities to market and sell its surveillance systems in Saudi Arabia.  In

2004, Mr. El Daher—this time through AD Venture—entered into four Representation

Agreements with Signalis/Sofrelog S.A.S. covering each of the four Territories: Saudi Arabia,

Qatar, the United Arab Emirates, and Oman.  Pursuant to the Representation Agreements, each

of which is on identical terms, AD Venture was entitled to a commission on any sales to

customers in the Territories, calculated as a percentage of the total value of each transaction.  *Id.*,

¶ 7.

In 2006, Signalis/Sofrelog S.A.S. was acquired by EADS Defence and Security Systems

S.A.S., part of the EADS Group.  EADS Defence and Security Systems S.A.S. was subsequently

renamed Cassidian S.A.S.  Almost immediately after EADS Defence and Security Systems

S.A.S. acquired Signalis/Sofrelog S.A.S., in 2006, Signalis/Sofrelog S.A.S. began to circumvent

its contractual obligations to AD Venture.  Signalis/Sofrelog S.A.S.'s affiliated entities within

the EADS Group began to contract directly for the provision of goods and services covered by

the Representation Agreements.  Signalis/Sofrelog S.A.S. and its affiliated entities also

apportioned artificially low values to Signalis/Sofrelog S.A.S.'s contribution in fulfillment of

contracts for products and services covered by the Representation Agreements.  The effect of these efforts was to radically reduce the volume of goods and services invoiced by Signalis/Sofrelog S.A.S. and to deprive AD Venture of commissions it was rightfully due.  *Id*. ¶ 8.

In addition to breaching its obligations under the Representation Agreements and depriving AD Venture of commissions, Signalis/Sofrelog S.A.S. and its affiliated entities within the EADS Group have also repeatedly refused to provide AD Venture with sufficient information and documents for AD Venture to determine the amount of commission Signalis/Sofrelog S.A.S. owes AD Venture.  AD Venture has made repeated attempts to obtain these documents from Signalis/Sofrelog S.A.S.  AD Venture requested copies of the contracts between Signalis/Sofrelog S.A.S. and customers in the Territories in July 2010, for the purpose of calculating the commissions due.  Signalis/Sofrelog S.A.S. refused this request in September 2010 and, simultaneously, informed AD Venture of its intention to allow the Representation Agreements to expire in December 2010.  On June 8, 2011, AD Venture initiated proceedings to obtain the disputed contracts in France, under Article 145 of the French Code of Civil Procedure. Before the Commercial Court of Pointoise, Signalis/Sofrelog S.A.S. refused to provide to AD Venture copies of all the contracts it had requested, on the basis, *inter alia*, of putative national security and confidentiality concerns, the substantive and temporal scope of the Representation Agreements, and the organization of the EADS Group.  *Id.*, ¶ 9.

On September 10, 2012, the dispute was referred to arbitration pursuant to Article 14 of the Representation Agreements.  On February 1, 2013, AD Venture submitted a Redfern

Schedule[1]  to the Tribunal seeking disclosure of documents sufficient to determine the amount of commissions due and owing.  The Tribunal decided not to consider AD Venture's disclosure request at that time, instead holding that the request should be held in abeyance.  Following the filing of the Statement of Claim and Statement of Defence in the Arbitration, AD Venture re-filed its request for production of documents on June 10, 2013 with a very slightly amended Redfern Schedule.

Signalis/Sofrelog S.A.S. objected to AD Venture's request for the production of documents, claiming that various contracts were not within its possession, custody or control because they were purportedly entered into by various of its parent or affiliated entities within the EADS Group.  *Id.*, ¶ 14.  *See also* the Redfern Schedule.  Signalis/Sofrelog S.A.S.'s explanation flies in the face of its longstanding course of dealing, demonstrating the close connection between itself, other affiliated entities, and its parent entities within the EADS Group.  El Daher Decl., ¶ 15.  That a number of different EADS Group entities were involved, in association with Signalis/Sofrelog S.A.S., in tendering for projects in the Territories, is a reflection of the functional connection and intertwined nature of the various companies within the EADS Group.

Signalis/Sofrelog S.A.S. is repeatedly on record in the Arbitration as stepping into the shoes of its parent entities within the EADS Group:

- making admissions apparently on behalf of them;

- summarizing the outcome of applications against them;

- setting forth EADS' purported rationale for its acquisition of Signalis/Sofrelog S.A.S. as if Signalis/Sofrelog S.A.S. were in fact EADS;

---

[1]   A Redfern Schedule  in an arbitration sets forth  a party's  disclosure requests, the opposing party's responses, and the Tribunal's rulings whether the requests should be

- justifying the direct tendering for projects in the Territories by entities within the EADS Group;  and

- setting out the structure of arrangements between its parent companies and local partners of which Signalis/Sofrelog S.A.S. itself claims to have no further knowledge.  *Id.*, ¶ 16.

The close connections between Signalis/Sofrelog S.A.S. and its affiliated entities within the EADS Group are undeniable and undermine Signalis/Sofrelog S.A.S.'s claim to be a "separate and independent business."   Depending on the context, Signalis/Sofrelog S.A.S. has alternately affirmed and denied its identity with its affiliated entities within the EADS Group as best suits its interests.

On June 28, 2013, the Tribunal issued the Order, ordering the disclosure of various documents entered into by Signalis/Sofrelog S.A.S.'s affiliates within the EADS Group, thus recognizing both the functional connection between those entities and Signalis/Sofrelog S.A.S. and the practice of sharing of corporate information among those entities in the EADS Group. Among others, the Tribunal ordered the production of the following documents the Four Contracts.  Those Four Contracts are:

    a.    A subcontract between EADS Deutschland GmbH and RTCC, including its amendments, schedule of payment, list of annexes, and related agreements relating to the Northern Fence Project in the Kingdom of Saudi Arabia  (Request 1.1);

    b.    A contract between EADS Deutschland GmbH and the Ministry of Interior of the Kingdom of Saudi Arabia relating to Project System Integrated Engineering in the Kingdom of Saudi Arabia, including its amendments, schedule of payment, and list of annexes (Request 2.1);

    c.    A subcontract between EADS Deutschland GmbH and Signalis GmbH relating to Project System Integrated Engineering in the Kingdom of Saudi Arabia (Request 2.1); and,

---

granted.  The final Redfern Schedule ("the Redfern Schedule") was adopted by Procedural Order No. 3 ("the Order," attached as Exhibit A to the El Daher Decl.).

      d.    A prime contract between Cassidian S.A.S. and a Qatar entity (the Project National Security Shield client) relating to Project National Security Shield (Request 7.1).  *Id.*, ¶ 17.

On July 5, 2013, Signalis/Sofrelog S.A.S. wrote to the Tribunal indicating that these documents were not in its possession or power, and that part of the Order therefore presented it "with obligations which are impossible for it to perform." *Id.*, ¶ 18.  AD Venture objected to Signalis/Sofrelog S.A.S.'s non-compliance with the Order by letter on July 8, 2013, requesting the Tribunal order Signalis/Sofrelog S.A.S. to comply in full with the Order.  *Id.*, ¶ 19.

On July 11, 2013, Signalis/Sofrelog S.A.S. produced a number of documents it was required to produce pursuant to the Order.  Most importantly, however, Signalis/Sofrelog S.A.S. continued to refuse to provide AD Venture with the Four Contracts, the critical documents needed to qualify its damages in the arbitration.  *Id.*, ¶ 20.

Signalis/Sofrelog S.A.S. again wrote to the Tribunal on July 15, 2013, regarding the Four Contracts,  attaching three communications by affiliated companies citing confidentiality obligations as the reason for their refusal to disclose the Four Contracts: (1) an email dated July 12, 2013 from EADS Deutschland GmbH to Signalis/Sofrelog S.A.S.; (2) an email dated July 9, 2013 from Cassidian S.A.S. to Signalis/Sofrelog S.A.S.; and (3) a letter also dated July 9, 2013 from Signalis GmbH to Signalis/Sofrelog S.A.S.  *Id.*, ¶ 21.

On July 19, 2013, the Tribunal denied AD Venture's request for peremptory orders for Signalis S.A.S./Sofrelog S.A.S. to comply with the Order, reserving its decision as to the consequences of Signalis/Sofrelog S.A.S's refusal to produce the documents.

## II.    <u>ARGUMENT</u>

As this Court is well aware, Rule 65 of the Federal Rules of Civil Procedure permits the issuance of expedited injunctive relief in the form of temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65.  The law in the Fourth Circuit is well settled that to

establish a right to preliminary injunctive relief, a plaintiff must demonstrate: "(i) 'a clear

showing that [the plaintiff] will likely succeed on the merits at trial'; (ii) 'a clear showing that

[the plaintiff] is likely to be irreparably harmed absent preliminary relief'; (iii) that 'the balance

of equities tips in [the plaintiff's] favor'; and (iv) consideration of the 'public consequences in

employing the extraordinary remedy of injunction' favors granting preliminary injunctive relief."

*Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir.

2009).  For the reasons set forth below, AD Venture is entitled to the issuance of a preliminary

injunction compelling production of the Four Contracts from EADS North America by August

31, 2013.

**A.** **AD Venture Can Establish A Clear Showing That It Is Entitled To The Discovery Sought Under Section 1782 And Is Likely To Prevail On The Merits**

AD Venture has a clear statutory right to the discovery it seeks under 28 U.S.C § 1782

and the caselaw interpreting that statute.  In particular, 28 U.S.C § 1782 provides that:

> The district court of the district in which a person resides or is
> found may order him to give his testimony or statement or to
> produce a document or other thing for use in a proceeding in a
> foreign or international tribunal, including criminal investigations
> conducted before formal accusation. The order may be made . . .
> upon the application of any interested person and may direct that
> the testimony or statement be given, or the document or other thing
> be produced, before a person appointed by the court. By virtue of
> his appointment, the person appointed has power to administer any
> necessary oath and take the testimony or statement.

*Id.*

Courts have repeatedly held that Section 1782 establishes a policy in favor of supporting

foreign tribunals in other countries through discovery in the United States.  Section 1782

"reflects 'the twin aims of providing efficient means of assistance to participants in international

litigation in our federal courts and encouraging foreign countries by example to provide similar

means of assistance to our courts.'"  *In re Letter of Request from Amtsgericht Ingolstadt, Federal Republic of Germany*, 82 F.3d 590, 592 (4th Cir. 1996) (quoting *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992), *cert. denied*, 506 U.S. 861 (1992)).  *See also In re the Search of the Premises Located at 840 140th Avenue NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) ("By providing broad assistance to foreign nations and tribunals via § 1782, the United States encourages foreign nations and tribunals to do the same, which benefits the United States government").  The scope of discovery authorized by Section 1782 has been called "generous[]," "broad," and "liberal." *Id*.

   To establish a prima face case for discovery under Section 1782, a plaintiff must show that: (1) the discovery made must be sought from a person residing or found in the district where the request is made; (2) the discovery must be for use in a proceeding before a foreign tribunal; and, (3) the applicant must be an "interested person" before the foreign tribunal.  *See* 28 U.S.C. § 1782.  In addition to the three elements, the Supreme Court recently held that the request must also be reasonable.  In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court identified four factors for district courts to balance when determining whether a Section 1782 discovery request is reasonable.  542 U.S. 241,  264-65 (2004).  These factors are (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.  *In re Premises*, 634 F.3d at 563 (quoting *Intel*, 542 U.S. at 264-65) (internal quotations omitted).

AD Venture's request is consistent with all three statutory requirements and all four of the balancing test factors.

1. **The Discovery AD Venture Seeks Is From A Person Residing In The Eastern District of Virginia**

The test for determining whether a party is "found" in a district is equivalent to the test for personal jurisdiction. *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378, 2011 WL 181311, at *7-8 (S.D. Fla. Jan. 19, 2011) (analyzing *In re Application of Edelman*, 295 F.3d 171, 179 (2d Cir. 2002)).  Where a party's headquarters are located within a district, that party is held to reside in the district and is subject to personal jurisdiction there. *See Jaffe v. LSI Group*, 874 F. Supp. 2d 499, 502 (E.D. Va. 2012).  EADS North America's principal place of business is in Herndon, Virginia, and so it therefore is "found" in this judicial district for purposes of Section 1782.

2. **The Discovery Is Sought For Use In A Proceeding Before A Foreign Tribunal**

As noted above, AD Venture has commenced an Arbitration in London, England, United Kingdom against Signalis/Sofrelog S.A.S.  *See supra*, Section I.  In *Intel*, the Supreme Court made plain that an arbitration panel such as the one presiding over the Arbitration commenced by AD Venture is a foreign tribunal within the meaning of Section 1782.  *See Intel*, 542 U.S. at 257-59 (holding that the term "foreign or international tribunal" should be interpreted broadly to include "foreign courts and quasi-judicial agencies" as well as "administrative and quasi-judicial proceedings abroad").  *See also In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1226-28 (N.D. Ga. 2006) (*Intel* suggests that a decision-making body is a tribunal "regardless of whether the body is governmental or private"); *Comisión Ejecutiva, Hidroeléctrica Del Rio Lempa v. Nejapa Power Co.*, No. 08-135-GMS, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008) ("[T]he Supreme

12

Court's decision in *Intel* . . . indicate[s] that Section 1782 does indeed apply to private foreign arbitrations."). Thus, the second statutory requirement is also satisfied.

### 3. AD Venture Is An "Interested Person" Within The Meaning Of The Statute

AD Venture is the claimant in the ongoing Arbitration in London, England, United Kingdom. In that Arbitration, AD Venture is seeking to vindicate its rights under the Representation Agreements. As the Supreme Court also made clear in *Intel* an applicant who is a claimant in a foreign arbitration is an "interested person" under Section 1782. Thus, the third, and final, statutory requirement is satisfied. *See Intel*, 542 U.S. at 256. *See also Lancaster Factoring Co., Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("interested person[s]" include parties to international proceedings).

### 4. Each Of The *Intel* Balancing Factors Favors Disclosure

*A. EADS North America Is Not A Participant In The Foreign Proceeding.* By this Application, AD Venture is seeking the production of documents from EADS North America— *not* the respondent in the Arbitration, Signalis/Sofrelog S.A.S. This factor therefore supports AD Venture's request: "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Signalis/Sofrelog S.A.S. told the Tribunal that it does not possess the Four Contracts and that its affiliates in the EADS Group will not consent to their production. Any argument by EADS North America that AD Venture must exhaust its opportunities to pursue the Four Contracts in the Arbitration would be inconsistent with Signalis/Sofrelog S.A.S.'s representations that they are not available to Signalis/Sofrelog S.A.S.

13

**B.   The Tribunal Would Likely Be Receptive To This Evidence.**   The burden is on a

party opposing Section 1782 discovery to prove lack of receptivity.   *See Euromepa S.A. v. R.*

*Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).   The Tribunal would likely be receptive to all

relevant evidence—especially evidence the Tribunal ordered produced.   *See* Declaration of

Graham Coop ("Coop" Decl.) ¶ 3, attached as Exhibit 1.

**C.   The Application Does Not Conceal An Attempt To Circumvent Foreign Proof-**

**Gathering Restrictions Or Other Policies Of A Foreign Country Or The United States.**   The

purpose of this factor is to weed out misuse of process, not to provide a technicality for

precluding discovery in the United States just because it could also be obtained through a foreign

tribunal.   *Intel*, 542 U.S. at 253 ("We now hold that § 1782(a) does not impose . . . a [foreign-

discoverability] requirement").   That said, AD Venture has sought discovery of the Four

Contracts from the Tribunal; indeed, the Tribunal ordered production of the documents.   AD

Venture is permitted to seek discovery in parallel tracks.   Courts have granted Section 1782

motions that are directed to parties to litigation in the United States and abroad, holding that

those requests are not improper "circumvention" merely because discovery mechanisms are

available in the foreign litigation.   *See*, *e.g.*, *Infineon Technologies AG v. Green Power*

*Technologies Ltd.*, 247 F.R.D. 1, 4 (D.D.C. 2005) (finding Section 1782 factors "not controlling"

but "helpful" in decision to amend protective order to permit use of production materials in

litigation in Germany, where moving party was "also currently pursuing these documents in the

German court"); *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1113 (E.D.

Wis. 2004) (granting request for documents for use in five other countries).

**D.   The Request Is Not Unduly Intrusive Or Burdensome.**   AD Venture's request

presents a minimal burden.   AD Venture has identified the specific materials to be produced: the

Four Contracts.  All of the requested materials can be easily copied.  The materials will be

provided to AD Venture's attorneys in the United Kingdom, who were ordered by the Tribunal

to sign a full and strict written confidentiality agreement.  *See* the Order.  The Four Contracts

would be submitted to the Tribunal under strict confidentiality obligations applicable to the

Arbitration.  Such arbitrations routinely deals with highly sensitive information and have

appropriate procedures in place to protect the confidentiality of the materials.  *See* Coop Decl. ¶

5.  AD Venture's request does not impose a logistical or administrative burden on EADS North

America and does not significantly increase the risk that confidential materials will be made

public.

The documents being sought under Section 1782 need not physically be located in the

United States.  *See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-

88 (BSJ), 2006 WL 3844464, at *5-*6 (S.D.N.Y. Dec. 29, 2006).  The decision in *In re*

*Gemeinshcaftspraxis* is instructive.  There the court took a textualist approach to reading Section

1782, noting that it "requires only that the *party* from whom discovery is sought be 'found' [in

the district]; not that the *documents* be found [t]here."  *Id*. at *5.  The court cited to reasoning

from the Supreme Court in *Intel*, in which the Supreme Court explained, "If Congress had

intended to impose . . . a sweeping restriction on the district court's discretion, at a time when it

was enacting liberalizing amendments to [Section 1782], it would have included statutory

language to that effect."  *Id.* (quoting *Intel*, 542 U.S. at 260 (internal quotation marks omitted)).

A number of courts have held the location of documents outside the United States to

weigh against requiring production.  *See*, *e.g.*, *In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010); *In*

*re Thao-Lao Lignite (Thail.) Co.*, 821 F. Supp. 2d 289 (D.D.C. 2011).  However, even under

such reasoning, a court may order production of "responsive documents located within the

United States, *a category that includes electronically stored information accessible from within [the District]*." *In re Veiga*, 746 F. Supp. 2d at 26 (emphasis added).  Thus, even if the Court here were to hold documents physically located outside the United States should not be subject to an order under Section 1782, the Court should still order production of documents to the extent they are electronically accessible from the United States and/or are located on a shared server accessible by EADS North America.

Each of the *Intel* factors therefore weigh in favor of granting AD Venture's request.

**B.      AD Venture Will Suffer Irreparable Injury If The Expedited Relief Is Not Granted**

As noted above, AD Venture has commenced this action incident to an arbitration pending in the United Kingdom in which it is seeking to vindicate its contractual rights.  The discovery sought is critical to AD Venture's ability to demonstrate with accuracy the amount of damages it has suffered.  Without the discovery, there is a significant risk that an adverse judgment could be entered by the Tribunal, which under notions of claim preclusion and comity could be entitled to preclusive effect.  *See*, *e.g. Ungaro-Benages* v. *Dresdner Bank AG*, 379 F.3d 1227, 1237 (11th Cir. 2004).  Courts have routinely recognized that this type of scenario creates the potential for irreparable injury sufficient to justify issuance of a preliminary injunction: when a harm cannot be prevented or fully rectified by final judgment after trial, the harm is irreparable. *See*, *e.g.*, *In re Infinity Bus. Grp., Inc.*, No. 10-06335, 2012 WL 5420410, at *2 (Bankr. D.S.C. June 1, 2012) ("Irreparable harm is harm that cannot be prevented or fully rectified by final judgment after trial."), citing *Roland Mach. Co. v. Dresser Indus, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).  The Supreme Court recognizes that irreparable injury sufficient to support a preliminary injunction can  result from the outcome separate judicial proceedings in another jurisdiction.  *See Leiter Minerals Inc. v. United States, 352 U.S. 220* (1957) (upholding a

preliminary injunction granted to prevent financial loss resulting from the adjudication of a separate proceeding).  Because AD Venture would be greatly inhibited in presenting its case to the Tribunal absent the relief sought from this Court, expedited relief is warranted here.  *See also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("[E]ven where a harm could be remedied by money damages at judgment, irreparable harm may still exist where the moving party's business cannot survive absent a preliminary injunction or where "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.").

### C.     The Balance Of Equities Tips Decidedly In AD Venture's Favor

Third, the balance of equities favors AD Venture and the issuance of a preliminary injunction.  As a threshold matter, AD Venture is seeking to establish recurring wanton breaches of the exclusive Representation Agreements that it signed with Signalis/Sofrelog S.A.S. Signalis/Sofrelog S.A.S. and its affiliated entities, however, have done everything in their power to avoid having to produce evidence that is directly relevant to those claims.  But fundamental notions of fairness weigh heavily in favor of transparency and full discovery of the relevant evidence.  *See, e.g.*, *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) ("The federal rules promote broad disclosure during discovery so each party can evaluate the strength of its evidence and chances of success"); *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) ("The purpose of Section 1782 is to liberalize the assistance given to foreign and international tribunals") (internal quotation omitted).   The universe of documents sought is extremely limited—four documents totaling less than 1,000 pages—such that there is virtually no burden to EADS North America.  Thus, the potential harm that would inure to AD Venture should it not receive this crucial evidence far outweighs any burden associated with this modest production.

**D.** **Consideration Of The Public Consequences In Employing The Extraordinary Remedy Of Injunction Favors Granting AD Venture Preliminary Injunctive Relief**

Finally, consideration of the public consequences in employing the extraordinary remedy of injunction favors granting preliminary injunctive relief.  The notion that Signalis/Sofrelog S.A.S. could successfully defend itself in the Arbitration simply by refusing to produce documents evidencing the breach offends fundamental notions of  justice embodied in the Federal Rules.  *See*, *e.g.*, *Newsome*, 437 F. Supp. 2d at 437; *Winn v. AP*, 903 F. Supp. 575, 580 (S.D.N.Y. 1995) ("The Federal Rules of Civil Procedure were designed to afford each party a full and fair opportunity to conduct discovery necessary for trial preparation").  Non-compliance with discovery orders should not be rewarded.  *See*, *e.g.*, *Winn*, 903 F. Supp. at 581 ("A federal district court possesses broad inherent power to impose sanctions in response to abusive litigation practices, thereby ensuring the proper administration of justice").

**III.** **CONCLUSION**

For all of the foregoing reasons, AD Venture requests that the Court issue and expedited order EADS North America to produce the Four Contracts for use in the Arbitration.

Dated: August 9, 2013                    Respectfully submitted,


                                         /s/   Jeffrey Kilduff                        

                                         Jeffrey Kilduff (VA Bar #30010)
                                         Jonathan Hacker (*Pro Hac Vice* pending)
                                         Robert Stern (*Pro Hac Vice* pending)
                                         O'Melveny & Myers LLP
                                         1625 Eye Street, NW
                                         Washington, DC 20006
                                         (202) 383-5300

                                         *Attorneys for Applicant AD Venture S.A.L.*
                                         *(O.S.C.)*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing MEMORANDUM IN SUPPORT

OF *EX PARTE* APPLICATION FOR ORDER DIRECTING EADS NORTH AMERICA TO

PRODUCE DOCUMENTS PURSUANT TO 28 USC § 1782 FOR USE IN FOREIGN

PROCEEDING was delivered via courier to the following office on the ninth of August 2013:

>       EADS North America, Inc.
>       2550 Wasser Terrace, Suite 9000
>       Herndon, VA  20171

Dated:  August 9, 2013                     __/s/__   Jonathan H. Singer_____

                                        Jonathan H. Singer